

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

~~GROVER SELLSON~~
ATTORNEY GENERAL

Honorable Evans J. Adkins
County Attorney
McCulloch County
Brady, Texas

Dear Sir:

Opinion No. 0-5668
Re: Taxation of land acquired by the
State at tax sales held in accord-
ance with the provisions of Arti-
cle 7345b V.A.C.S.

In your letter of October 8, 1943, you state that cer-
tain land in your county has been acquired by the State of
Texas at tax sales held in accordance with the provisions of
Article 7345b V.A.C.S., and that this land customarily is sold
by your sheriff at public auction after the expiration of the
statutory redemption period. With reference to this situation
you inquire:

1. After the land has been purchased by the
State, how should it be shown on the tax rolls?

2. When the purchaser at the sheriff's sale
takes title, is such title free of all back taxes,
providing that the proceedings have been regular?

3. Would the answers to the above questions
be altered or affected by the fact that the land
was bid in by the State for its "adjudged value"
rather than for "the amount of the judgment and
costs"?

In our Opinion No. 0-5506 we ruled that the purchaser
at a foreclosure sale conducted in accordance with the provi-
sions of Article 7345b acquires a title which is free of all
liens and claims for ad valorem taxes delinquent <u>at the time
of the judgment</u> in the tax suit, unless such claims or liens
are in favor of a taxing unit which was neither made a party
to the suit nor served with notice of such suit. In the in-
stant situation the State is the purchaser at the foreclosure
sale, and a subsequent purchaser takes title from the State
rather than from such sale. Consequently, the aforementioned
Opinion affords a partial solution to the questions here under
consideration. The State as purchaser at the foreclosure sale

acquires a title which is free and clear with respect to the taxes discussed in said Opinion; this title is in turn acquired by the person who purchases from the State, with the result that, with respect to the taxing units which were parties to the tax suit or which were notified of its pendency, such person acquires at the very least a title which is free from liens and claims for ad valorem taxes delinquent at the date of judgment in the tax suit.

Another partial solution is afforded by our Opinion No. 0-3624, wherein we held that after the expiration of the period of redemption, land acquired by the State in tax foreclosure proceedings and held by it cannot be assessed for taxes. As a consequence of this Opinion we must conclude that a person who purchases such land from the State acquires, in addition to the title discussed in the preceding paragraph, a title which is free from all liens and claims for ad valorem taxes which arise subsequent to the expiration of the period of redemption.

Consequently, if your second question is to be answered other than in the affirmative, such answer can be made only if it is possible for the land to become burdened with liens and claims for taxes during the two year period in which the original owner possesses a power of redemption.

In our Opinion No. 0-265 and in subsequent Opinions, the tax immunity accorded lands held by the State after the expiration of the period of redemption was rested upon the principle that, absent a clear expression of intent, the State neither taxes its own property nor consents to its taxation by other taxing units. Property held by the State after the expiration of the period of redemption clearly falls within this principle; the status of such property prior to the expiration of the period is not so easily discernible, but if such property can be said to be "property owned by the State" or "property the title to which is in the State", it is apparent that the aforementioned principle will operate to preclude any liens or claims for taxes during such period.

When the State bids in land at a tax foreclosure sale, the sheriff is required to "make and execute a deed to the State" and to record such deed in the record of deeds. Articles 7328, 7330, 7345b (7). Such deed stands as the strongest muniment of title to the property which it covers; "any such deed shall be held in any court of law or equity in this State to vest good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud." Section 13 of Article VIII of the Texas Constitution; Article 7330. "The title to said property" is "held by the taxing unit purchasing same for the use and benefit of itself and all other taxing units which

are parties to the suit and which have been adjudged in said
suit to have tax liens against such property." Article 7345b
(9). As purchaser of such property, the State "acquires all
of the title of both the plaintiff and defendant in the judg-
ment" in the tax suit. City of Houston v. Bartlett, 68 S.W.
730 (error denied). Contrariwise, for two years after the
foreclosure sale the original owner possesses the power to
redeem the property and the right to possession thereof.
Articles 7345b (12), 7340; 40 Tex. Jur. ¶ ¶ 205, 206. The
difficult task--the task which will evolve a solution to the
questions under discussion--is to ascertain which of these
bundles of powers, rights and privileges constitutes the hold-
er thereof the "owner" of the property for purposes of taxa-
tion.

In 26 R.C.L. ¶ 290, the next-writer states:

". . . Lands bought in by a state at a sale
for non-payment of taxes and held by the state sub-
ject to the former owner's right of redemption can-
not be assessed for taxes while so held."

Again in 26 R.C.L. ¶ 384, the writer says:

". . . While the details of the process of re-
demption vary in the different states, the proce-
dure being of course entirely a statutory one, the
methods adopted fall into two general classes. By
the original method, which still prevails in many
of the states, a deed was delivered to the purchaser
within a few days after the sale, and the title pass-
ed to him subject to defeasance by redemption during
the statutory period, which was commonly two years
from the sale. During that period the purchaser re-
mained passive, and if the owner failed to exercise
his right of redemption within the specified time,
the title became absolute by force of the statute,
without any further proceedings in court or else-
where to establish it. By the second method, which
is now in force in a number of the states, the pur-
chaser's title is inchoate and he receives no deed
until the period of redemption has expired, and be-
fore the expiration of the period he must give per-
sonal notice to the owner, if it is possible to find
him, of the time when the right of redemption will
expire and the amount which he must pay in order to
redeem the property, and no deed is issued to the
purchaser and no title passes to him until this notice
has been sent or it has been shown to be impossible
to sent it........."

It will be noticed that the method of redemption established by the Texas Constitution and the statutes enacted thereunder falls within the first class above described. We are inclined to agree with the writer's statement that in jurisdictions following this mode of redemption, title to the property passes to the purchaser with the tax deed, such title being subject to defeasance during the redemption period. The power of redemption and the right to possession possessed by the original owner are not, we feel, sufficient indicia of ownership to justify the taxation of such person. During the period of redemption, title is out of the original owner; to regain such title he must exercise the power which he possesses.

Additional evidence in support of this conclusion is found in the statutes which prescribe the mode of redemption of property sold at tax sales. Articles 7283 and 7345b allow redemption of property upon payment by the original owner, inter alia, of "all taxes. . . .thereafter paid thereon." The textwriter in 40 Tex. Jur. | 201 has interpreted this provision to refer to taxes "paid by the purchaser subsequent to his purchase." We agree with this interpretation. If it had been the intention of the legislature to tax such property against the original owner thereof during the period of redemption, certainly some verb other than "paid" would have been employed, for the use of this verb normally conveys the idea that the original owner is to reimburse some other person for taxes which such person has paid, rather than the idea that the original owner himself is to pay such taxes as a condition of redemption.

Consequently, we hold that the purchase by the State vests in it a defeasible title, which title is evidenced by the sheriff's deed, and that as holder of this title the State is the "owner" of such property for purpose of taxation. If this be true, the property is not subject to taxation during the two year period. Your second question is therefore answered in the affirmative.

In reaching this conclusion we are not unaware of the fact that our courts have occasionally asserted that the original owner of property sold at a tax foreclosure sale possesses "title" to such property during the period of redemption. See e.g., Bente v. Sullivan, 115 S.W. 350, 353 (error refused) and McCraw v. Potts, 27 S.W. (2d) 550. However, an examination of these and similar cases reveals that in each the court was employing the word "title" not in the strictly technical sense in which "title" is tantamount to ownership but rather in the looser sense in which "title" is but an abbreviated method of saying that the original owner possesses a power of redemption and a right to possession. In none of these cases has a court

either declared or intimated that the possession of such power and right constitutes the possessor an "owner" for purposes of taxation. Consequently, we deem none of these cases to be determinative of the question at hand. Any contrary statements contained in our Opinion No. 0-3624 are hereby overruled.

In answer to your first question, you are respectfully advised that such property should be carried on the tax rolls as is other non-taxable property owned by the State. Your third question is answered in the negative; we see nothing either in the statutes or in the cases which would make the answers to your preceding questions dependent upon the method by which the property is bid in by the State.

Trusting that the foregoing satisfactorily answers your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/R. Dean Moorhead
R. Dean Moorhead
Assistant

RDM:fc:wc

APPROVED DEC 10, 1943
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered and Approved in Limited Conference